# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 21-163V
Filed: November 17, 2025

|  |  |
|---|---|
| COURTNEY LANE,<br><br>            Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>            Respondent. | Special Master Horner |

*Paul R. Brazil*, Muller Brazil, LLP, Dresher, PA, for petitioner.
*Benjamin Patrick Warder*, U.S. Department of Justice, Washington, DC, for respondent.

### RULING ON ENTITLEMENT[1]

On January 6, 2021, petitioner filed a petition under the National Childhood Vaccine Injury Act ("Vaccine Act"), 42 U.S.C. § 300aa-10, *et seq.* (2012),[2] alleging that she suffered a Table Injury of Shoulder Injury Related to Vaccine Administration ("SIRVA") affecting her right shoulder and following an influenza ("flu") vaccination she received on October 25, 2019. (ECF No. 1.) On November 21, 2024, petitioner moved for a ruling on the written record. (ECF No. 59.) For the reasons set forth below, I conclude that petitioner is entitled to compensation for a Table Injury of SIRVA.

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the document will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Within this decision, all citations to § 300aa will be the relevant sections of the Vaccine Act at 42 U.S.C. § 300aa-10, *et seq.*

1

## I.   Applicable Statutory Scheme

Under the National Vaccine Injury Compensation Program, compensation awards are made to individuals who have suffered injuries after receiving vaccines. In general, to gain an award, a petitioner must make a number of factual demonstrations, including showing that an individual received a vaccination covered by the statute; received it in the United States; suffered a serious, long-standing injury; and has received no previous award or settlement on account of the injury. Finally – and the key question in most cases under the Program – the petitioner must also establish a causal link between the vaccination and the injury.

In some cases, the petitioner may simply demonstrate the occurrence of what has been called a "Table Injury." That is, it may be shown that the vaccine recipient suffered an injury of the type enumerated in the "Vaccine Injury Table," corresponding to the vaccination in question, within an applicable time period following the vaccination also specified in the Table. If so, the Table Injury is presumed to have been caused by the vaccination, and the petitioner is automatically entitled to compensation, unless it is affirmatively shown that the injury was caused by some factor other than the vaccination. § 300aa-13(a)(1)(A); § 300aa-11(c)(1)(C)(i); § 300aa-14(a); § 300aa-13(a)(1)(B).

As relevant here, the Vaccine Injury Table lists a Shoulder Injury Related to Vaccine Administration or "SIRVA" as a compensable injury if it occurs within 48 hours of vaccine administration. § 300aa-14(a), *amended by*, 42 C.F.R. § 100.3. Table Injury cases are guided by statutory "Qualifications and aids in interpretation" ("QAIs"), which provide more detailed explanation of what should be considered when determining whether a petitioner has suffered an injury listed on the Vaccine Injury Table. 42 C.F.R. § 100.3(c). To be considered a "Table SIRVA," petitioner must show that her injury fits within the following definition:

> SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis . . . . A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time-frame;

2

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

Alternatively, if no injury falling within the Table can be shown, the petitioner may still demonstrate entitlement to an award by showing that the vaccine recipient's injury was caused-in-fact by the vaccination in question. § 300aa-13(a)(1)(A); § 300aa-11(c)(1)(C)(ii). To so demonstrate, a petitioner must show that the vaccine was "not only [the] but-for cause of the injury but also a substantial factor in bringing about the injury." *Moberly v. Sec'y of Health & Human Servs.*, 592 F.3d 1315, 1321 (Fed. Cir. 2010) (quoting *Shyface v. Sec'y of Health & Human Servs.*, 165 F.3d 1344, 1352 (Fed. Cir. 1999)); *Pafford v. Sec'y of Health & Human Servs.*, 451 F.3d 1352, 1355 (Fed. Cir. 2006). In particular, a petitioner must show by preponderant evidence: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of proximate temporal relationship between vaccination and injury in order to prove causation-in-fact. *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005).

For both Table and Non-Table claims, Vaccine Program petitioners must establish their claim by a "preponderance of the evidence." § 300aa-13(a). That is, a petitioner must present evidence sufficient to show "that the existence of a fact is more probable than its nonexistence." *Moberly*, 592 F.3d at 1322 n.2. Proof of medical certainty is not required. *Bunting v. Sec'y of Health & Human Servs.*, 931 F.2d 867, 872-73 (Fed. Cir. 1991). However, a petitioner may not receive a Vaccine Program award based solely on his or her assertions; rather, the petition must be supported by either medical records or by the opinion of a competent physician. § 300aa-13(a)(1). Once a petitioner has established his or her *prima facie* case, the burden then shifts to respondent to prove, also by preponderant evidence, that the alleged injury was caused by a factor unrelated to vaccination. *Althen*, 418 F.3d at 1278 (citations omitted); § 300aa-13(a)(1)(B).

## II.   Procedural History

Based on the allegations in the petition, this case was initially assigned to the Chief Special Master as part of the Special Processing Unit ("SPU"), which is intended to expedite cases having a high likelihood of informal resolution. (ECF Nos. 8-9.) Petitioner filed affidavits and medical records marked as Exhibits 1-15. (ECF Nos. 1, 18, 20, 28.) Thereafter the parties attempted informal resolution, but were unable to reach an agreement. The case was reassigned to the undersigned in June of 2023. (ECF Nos. 40-41.)

Petitioner filed additional records marked as Exhibits 16-17 (ECF Nos. 43, 50) and respondent filed his Rule 4 Report (ECF No. 48). The only issue raised by respondent was whether petitioner's shoulder pain first began within 48 hours of vaccination. (*Id.* at 17-18.) Thereafter, petitioner filed phone records (ECF No. 56; Ex. 18) and an additional affidavit (ECF No. 58; Ex. 19).

Petitioner was then directed to file a motion for a ruling on the written record "as to whether petitioner has demonstrated a Table Injury of SIRVA." (Non-PDF Scheduling Order, filed Oct. 8, 2024.) Petitioner filed the requisite motion on November 21, 2024. (ECF No. 59.) Respondent filed a response on December 20, 2024 (ECF No. 60), and petitioner filed no reply.[3]

In light of the above, I have determined that the parties have had a full and fair opportunity to develop the record and that it is appropriate to rule on the existing record. *See* Vaccine Rule 8(d); Vaccine Rule 3(b)(2); *Kreizenbeck v. Sec'y of Health & Human Servs.*, 945 F.3d 1362, 1366 (Fed. Cir. 2020) (noting that "special masters must determine that the record is comprehensive and fully developed before ruling on the record"). Accordingly, petitioner's motion is now ripe for resolution.

### III.    Summary of Record Evidence

#### a. Medical Records

Petitioner received the flu vaccination at issue in her right deltoid on October 25, 2019, during an encounter with her primary care provider. (Ex. 1, pp. 17-21.) She was 39 years old at the time and, although respondent notes a number of prior medical issues, respondent agrees that she did not have any preexisting history of pain, injury, or dysfunction, affecting her right shoulder. (ECF No. 60, p. 2.)

Petitioner did not return to medical care until January 16, 2020, between two to three months after vaccination. (ECF No. 1, pp. 13-16.) At that time, she presented to her primary care provider with chief complaints of (1) "right arm pain P[ost] flu inj[ection]" and (2) "Pain at injection site R[ight] deltoid from flu vaccine given in Oct[ober]." (*Id.* at 13.) It was further noted that petitioner was experiencing some pain with her lymphedema pump on her arms. (*Id.*) Under history of present illness, petitioner "states that ever since she got her flu shot she has had a lot of discomfort of her right upper arm [and] it hurts to do anything with that or to lay on it." (*Id.*) At this initial encounter, petitioner demonstrated tenderness to palpation on physical exam, but had normal range of motion. (*Id.* at 16.)

---

[3] Somewhat confusingly, petitioner titled her motion as a "motion for a ruling on the record regarding onset," potentially implying that the relief sought by the motion would be limited to a finding of fact. However, in the body of her motion and in her prayer for relief, petitioner was explicit in requesting that she be found entitled to compensation for a Table SIRVA. (ECF No. 59, p. 7.) In response, respondent acknowledged that the parties had been prompted to brief petitioner's entitlement to compensation for a Table SIRVA, discussed the complete requirements for demonstrating a Table SIRVA, and, although he raised no issue other than timing of onset, asserted that petitioner had failed to meet her overall burden of proof to demonstrate entitlement to compensation. (ECF No. 60.)

4

Petitioner presented for orthopedic care about a month later, on February 19, 2020. (Ex. 2, pp. 32-35.) At that encounter, the history records that petitioner "received the flu shot in October 2019 and a couple hours later she star[t]ed experiencing pain that has progressively worsened." (*Id.* at 32.) It was further explained that "[i]nitially her pain was at the injection site (which was administered higher in the shoulder than normal) but has now moved into the deltoid and radiates into the bicep." (*Id.*) Physical exam indicated in pertinent part:

> There is no atrophy noted about the right shoulder. The right shoulder has tenderness to palpation over supraspinatus tendon, AC joint. The right shoulder shows pain on range of motion, primarily abduction as well as forward flexion. There is pain on abduction against resistance, pain over the leading edge of the acromion. Pain with forward flexion, abduction past 140 degrees. There is pain near the AC joint on the right. Cross arm test reveals pain directly over the AC joint. There is full internal and external rotation with 5/5 strength noted with the elbows at the side. Supraspinatus strength 4/5. A positive Hawkins impingement test is noted. Discomfort with Speed's test. Sensation, motor intact.

(*Id.* at 34-35.) A follow up MRI showed tendinosis of the subscapularis/supraspinatus tendon, impingement of the acromial humeral space, and mild subacromial bursitis. (*Id.* at 41-42.)

On May 15, 2020, petitioner underwent arthroscopic shoulder surgery. (Ex. 3, p. 2-4.) Specifically, she underwent distal clavicle resection, debridement, and subacromial decompression. (*Id.* at 2.) Petitioner returned to care in the autumn of 2020. At that time, she complained of ongoing shoulder stiffness even after her surgery. She was assessed by an orthopedic surgeon as suffering a SIRVA with additional frozen shoulder. (Ex. 10, pp. 14-16.) Respondent has not cited any medical encounter in which petitioner provided a history inconsistent with the above. (ECF No. 60, pp. 2-3.)

### b. Written Statements and Phone Records

Petitioner averred that her right shoulder pain began the day of her vaccination and then got progressively worse. (Ex. 19.) She indicated that, prior to presenting for care on January 16, 2020, she had contacted her primary care provider by telephone multiple times. (Ex. 12.) Specifically, she recalled calling the office to complain of shoulder pain about one-week post-vaccination, "[a] few weeks later," again a "week or two later," and a fourth time in December of 2019. (*Id.*) She was repeatedly told to use ice and Tylenol, and it was not until the fourth phone call that she was advised to schedule an appointment. (*Id.*)

The provider's telephone encounter records do not document this pattern of calls. (Ex. 17.) During the relevant period, petitioner called the office on October 29, 2019

5

regarding a prescription (*Id.* at 12), and on November 26, 2019, again regarding her prescription, but also complaining of an eye infection (*Id.* at 11).  She is first documented as having called about her alleged shoulder pain on December 16, 2019.  (*Id.* at 10.)  That record states petitioner's message as "Flu inj[ection] arm still hurts."  (*Id.*)  She made additional calls on December 17, 2019, December 31, 2019, and January 13, 2020, that do not appear to be related to her shoulder.  (*Id.* at 6-8.)  She also called a second time regarding her shoulder pain on January 13, 2020.  That message indicates "Site [of] flu inj[ection] still really hurts."  (*Id.* at 5.)

### IV.     Party Contentions

Petitioner argues that postponing treatment is not dispositive of when onset of shoulder pain actually occurred.  (ECF No. 59, p. 5 (citing *Lang v. Sec'y of Health & Human Servs.*, No. 17-995V, 2020 WL 7873272 (Fed. Cl. Spec. Mstr. Dec. 11, 2020); *Forman-Franco v. Sec'y of Health & Human Servs.*, No. 15-1479V, 2018 WL 1835203 (Fed. Cl. Spec. Mstr. Feb. 21, 2018); *Tenneson v. Sec'y of Health & Human Servs.*, No. 16-1664V, 2018 WL 3083140 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), *mot. for rev. denied*, 142 Fed. Cl. 329 (2019); *Gurney v. Sec'y of Health & Human Servs.*, No. 17-481V, 2019 WL 2298790 (Fed. Cl. Spec. Mstr. Mar. 19, 2019)).)  Moreover, she notes that it is not unusual that a SIRVA sufferer would not seek immediate care.  (*Id.* at 5-6 (citing *Hanna v. Sec'y of Health & Human Servs.*, No. 18-1455V, 2021 WL 3486248 (Fed. Cl. Spec. Mstr. July 15, 2021); *Smallwood v. Sec'y of Health & Human Servs.*, No. 18-0291V, 2020 WL 2954958, at *10 (Fed. Cl. Spec. Mstr. Apr. 29, 2020)).)  Instead, petitioner argues that where a delay in treatment has contributed to dismissal, it has been in connection with evidence inconsistent with an immediate post-vaccination onset.  (*Id.* at 6 (citing *Lavender v. Sec'y of Health & Human Servs.*, No. 18-1921V, 2021 WL 667187, at *9-11 (Fed. Cl. Spec. Mstr. Jan. 25, 2021); *Small v. Sec'y of Health & Human Servs.*, No. 15-478V, 2019 WL 6463985, at *11 (Fed. Cl. Spec. Mstr. Nov. 1, 2019), *mot. for rev. denied*, 2020 WL 918799 (Fed. Cl. Jan. 27, 2020)).)

Petitioner contends that her delay in seeking treatment was not extraordinary, that the history of onset she provided to her providers wholly supports onset occurring within 48 hours of vaccination, and there is no evidence inconsistent with an immediate onset.  (ECF No. 59, pp. 6-7.)  Petitioner further contends that respondent has not raised any other issue with her alleged Table SIRVA.  (*Id.* at 7.)  She asserts that her pain and reduced range of motion were limited to her right shoulder and that no other condition or abnormality was identified to explain her symptoms.  Thus, she contends she should be found entitled to compensation for a Table SIRVA.  (*Id.*)

Respondent contends, however, that there are multiple reasons why the evidence points away from a 48-hour post-vaccination onset.  (ECF No. 60, p. 7.)  First, petitioner's recollection that she called her medical provider multiple times post-vaccination is not consistent with the practice's telephone encounter records.  (*Id.* at 7-9.)  Second, the telephone encounter records are detailed and show that petitioner was in frequent contact with her medical provider for a variety of issues.  (*Id.* at 9.)  Third, respondent finds the history of onset occurring "hours" after vaccination, as recorded in

the medical encounter records, to be unpersuasive given the earlier telephone encounter records.  (*Id.* at 9-10.)  Respondent argues that, whereas petitioner argued that in general SIRVA sufferers often delay care, this would still have been unusual *for her*.  (*Id.* at 10-11.)  Respondent contends that the onset issue is dispositive and, though he discusses the overall standard for determining the presence of a Table SIRVA, does not raise any other issue based on the facts of this case.  (*Id.* at 11-12.)

**V.    Discussion**

    a. <u>SIRVA QAI (1) – No history of pain, inflammation or dysfunction of the affected shoulder</u>

The first SIRVA criterion requires that there be no relevant prior history of shoulder concerns that could explain the post-vaccination symptoms.  Petitioner asserts that she had no prior history of any right shoulder injury.  (ECF No. 59, p. 7.)  In his motion response, respondent likewise acknowledges that "[p]etitioner did not have a pre-vaccination history of pain, injury, or dysfunction in her right shoulder."  (ECF No. 48, p. 2.)  Based on my own review of the record, I reach the same conclusion.

Accordingly, petitioner has demonstrated the first SIRVA criterion by preponderant evidence.

    b. <u>SIRVA QAI (2) – Pain occurs within the specified time-frame (*i.e.* 48 hours)</u>

The second SIRVA criterion requires that the petitioner experience an onset of shoulder pain within 48 hours of the vaccination at issue.  This is the only element of petitioner's prima facie case that is contested by respondent.  Importantly, however, there is no meaningful dispute that petitioner's treatment records consistently and explicitly place the onset of her shoulder pain within 48 hours of vaccination.  (Ex. 1, p. 13 (reporting pain "ever since" flu vaccination); Ex. 2, p. 32 (reporting pain within hours of vaccination); *see also* Ex. 9, p. 15; Ex. 10, p. 14; Ex. 19.)  "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions.  With proper treatment hanging in the balance, accuracy has an extra premium.  These records are also generally contemporaneous to the medical events."  *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Respondent argues that the medical treatment records should not be viewed as persuasive because petitioner delayed seeking treatment, which was unusual for her, and because her later asserted recollection that she telephoned her provider multiple times prior to her first treatment encounter is inconsistent with the provider's telephone records.  These arguments are not persuasive.  Although respondent is correct that petitioner's hindsight recollection regarding the series of telephone calls does not appear to be entirely accurate, this does not outweigh the contemporaneous treatment

records. Even taking account of the telephone encounter records maintained by petitioner's primary care provider, these records do support petitioner's recollection that she made some calls to her provider prior to complaining of shoulder pain at her first appointment and also ultimately support petitioner's contention regarding onset. Specifically, although petitioner did not accurately recall the precise series of telephone calls she had made, the records still reflect that she first reported her right shoulder pain to her provider on December 16, 2019, at that time indicating that her arm "still hurts" from her flu injection. (Ex. 17, p. 10.) This is entirely consistent with the histories she subsequently provided during her in-office examinations.

I have considered respondent's contention that petitioner's own pattern of initiating telephone encounters for other purposes could imply that she would have been likely to report any shoulder pain promptly; however, I do not find the telephone encounter records sufficiently weighty on this point. There is no presumption that medical records are accurate and complete as to all physical conditions. *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Here, the telephone encounters were explicitly for other specific purposes and, as telephone encounters, they did not include any opportunity for general examination. Ultimately, absent any significant evidence contradicting petitioner's initial treatment record, petitioner does not bear any specific burden of explaining her pattern of care. *E.g.*, *Lang*, 2020 WL 7873272, at *11 (noting that "there is no such thing as an 'appropriate' time to seek treatment").

Accordingly, petitioner has demonstrated the second SIRVA criterion by preponderant evidence.

### c. SIRVA QAI (3) -- Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered

The third SIRVA criterion requires that the post-vaccination pain and reduced range of motion be limited to the affected shoulder. This requirement encompasses an affirmative showing that the petitioner's presentation included a reduction in range of motion. *Bolick v. Sec'y of Health & Human Servs.*, No. 20-893V, 2023 WL 8187307, at *6-8 (Fed. Cl. Spec. Mstr. Oct. 19, 2023). Otherwise, as I have previously explained at greater length in a prior decision that "the gravamen of this requirement is to guard against compensating claims involving patterns of pain or reduced range of motion indicative of a contributing etiology beyond the confines of a musculoskeletal injury to the affected shoulder." *Grossmann v. Sec'y of Health & Human Servs.*, No. 18-13V, 2022 WL 779666, at *15 (Fed. Cl. Spec. Mstr. Feb. 15, 2022) (citing *Werning v. Sec'y of Health & Human Servs.*, No. 18-267V, 2020 WL 5051154, at *10 (Fed. Cl. Spec. Mstr. July 27, 2020).)

Petitioner asserts that her pain and reduced range of motion were limited to her right shoulder. (ECF No. 59, p. 7.) Respondent has not raised any argument to the contrary. (ECF No. 60.) Although petitioner did not initially have reduced range of motion recorded at her first encounter, she did later have a demonstrated reduction in

8

motion.  (Ex. 10.)  Additionally, based on my own review, I note that petitioner did complain of symptoms radiating down the arm (*e.g.*, *id.* at 7); however, although other etiologies for these symptoms were investigated, petitioner's diagnoses remained referrable only to the shoulder (*id.* at 11-16).

Accordingly, there is preponderant evidence that petitioner's pain and reduced range of motion were limited to her affected shoulder within the meaning of the third SIRVA criterion.  *See Grossmann*, 2022 WL 779666, at *15.

### d. SIRV QAI (4) – No other condition or abnormality is present that would explain the patient's symptoms.

The fourth SIRVA criterion requires that "[n]o other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, and any other neuropathy)."  42 C.F.R. § 100.3(c)(10)(iv).  This element of petitioner's showing "requires consideration of a petitioner's medical condition as a whole."  *Record v. Sec'y of Health & Human Servs.*, No. 21-1312V, 2025 WL 868957, at *6 (Fed. Cl. Feb. 26, 2025).  While the "other condition or abnormality" at issue must qualify as an explanation for the petitioner's symptoms, it "need not be a better or more likely explanation."  *French v. Sec'y of Health & Human Servs.*, No. 20-0862V, 2023 WL 7128178, at *6 (Fed. Cl. Spec. Mstr. Sep. 27, 2023).

Petitioner asserts that no other condition or abnormality is present that would explain her symptoms.  (ECF No. 59, p. 7.)  Respondent has not raised any argument to the contrary.  (ECF No. 60.)  Based on my own review of the record, I likewise conclude that no other condition or abnormality is implicated.  In particular, as noted in the preceding section, petitioner's symptoms radiating down her arm were investigated for a potential neurologic cause, but none was found.  (Ex. 9, p. 10; Ex. 10, p. 14.)

Accordingly, petitioner has demonstrated the fourth SIRVA criterion by preponderant evidence.

### e. Factor unrelated to vaccination

Pursuant to the Vaccine Act, once petitioner has met her *prima facie* burden of demonstrating a Table Injury, respondent may still prove the condition is "due to factors unrelated to the administration of the vaccine described in the petition."  § 300aa-13(a)(1)(B).  In this case, respondent has not raised any issue as to any factor unrelated to vaccination.

## VI. Conclusion

For the reasons discussed above, and based on consideration of the record as a whole, the evidence preponderates in favor of a finding that petitioner is entitled to

compensation for a Table Injury of SIRVA relative to her October 25, 2019 flu vaccination.  A separate damages order will be issued.

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master
